UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| AARON KIRK and AMY KIRK, | Case No. 23-CV-1758 (PJS/LIB) |
| Plaintiffs, | |
| v. | ORDER |
| CITY OF DULUTH; GORDON RAMSAY, former Chief of the Duluth Police Department, in his official and personal capacity; MICHAEL CEYNOWA, Chief of the Duluth Police Department, in his official and personal capacity; JEFFREY KAZEL, supervisor with the Duluth Police Department, in his official and personal capacity; RONALD TINSLEY, STEVEN PRUSE, and SARA SCHUTTE, officers with the Duluth Police Department, in their official and personal capacities; ROBERT GRYDAHL, former officer with the Duluth Human Rights Commission, in his official and personal capacity; CARL CRAWFORD, officer with the Duluth Human Rights Commission, in his official and personal capacity; DUSTIN JAMES TURCOTTE, | |
| Defendants. | |

Phillip Fishman, PHILLIP FISHMAN LAW OFFICE, for plaintiffs.

Elizabeth Sellers Tabor, CITY OF DULUTH ATTORNEY'S OFFICE, for defendants City of Duluth, Gordon Ramsay, Michael Ceynowa, Jeffrey Kazel, Ronald Tinsley, Steven Pruse, Sara Schutte, Robert Grydahl, and Carl Crawford.

Plaintiffs Aaron and Amy Kirk bring various claims against current and former employees and officials of the City of Duluth (the "City defendants").[1] This matter is before the Court on the City defendants' motion to dismiss. For the reasons that follow, the motion is granted as to all claims except the Kirks' claim against defendant Sarah Schutte.[2]

## I. BACKGROUND

Plaintiffs Aaron Kirk, who is black, and Amy Kirk, who is white, are a married couple who reside in a predominantly white neighborhood in Duluth, Minnesota. Compl. ¶¶ 1, 7. The Kirks allege that, beginning in 2007 and continuing for many years thereafter, they were subjected to a campaign of racist harassment from two of their neighbors (who lived with each other). Compl. ¶¶ 2, 18. Specifically, the neighbors repeatedly made false and unfounded complaints about the Kirks to the Duluth Police Department, subjecting the Kirks (and sometimes their children) to over 100 interactions with the police. Compl. ¶ 2. On every occasion, the responding officers found the complaints to be unfounded. Compl. ¶ 2.

---

[1]The Kirks also bring a claim against Dustin James Turcotte, who is not a City employee or official. Compl. ¶¶ 12, 15, 89–94. Turcotte has not appeared in this action and is in default. ECF No. 38. The Kirks' claim against him remains pending.

[2]The complaint refers to "Sarah Schultee," but the parties are in apparent agreement that her last name is spelled "Schutte." ECF No. 11 at 2; ECF No. 18 at 4. The Court will accordingly direct that the caption be amended.

The neighbors' complaints ran the gamut from frivolous to serious, including complaints that the Kirks' daughter was drawing on the sidewalk with chalk, Compl. ¶ 42; that the Kirks' dog (a small Schnauzer) was aggressive and made too much noise, Compl. ¶¶ 20–21, 23–24, 26–27, 29–30; that the Kirks were running a methamphetamine lab, Compl. ¶ 33; that Aaron Kirk was abusing his child, Compl. ¶ 22; that Aaron Kirk was "slamming doors" and making noise inside his own home, Compl. ¶¶ 25, 39; and that Aaron Kirk was planning to steal roofing materials that the neighbors' contractor had left outdoors, Compl. ¶ 40. On one occasion, one of the neighbors called Aaron Kirk "nigger" and threatened to call the Ku Klux Klan. Compl. ¶ 34. The same neighbor twice told police that she was going to shoot the Kirks' dog. Compl. ¶¶ 24, 26.

According to the complaint, the "most recent[]" incident—an incident that did not involve the neighbors—occurred in July 2020. Compl. ¶ 48. Aaron Kirk was driving on a Duluth street when defendant Dustin Turcotte cut him off. *Id.* Kirk sounded his horn, and Turcotte responded by, among other things, repeatedly calling Kirk "nigger," following Kirk first to a restaurant and then to a bank, blocking Kirk's car in the restaurant parking lot, and repeatedly threatening to beat Kirk with brass knuckles. Compl. ¶¶ 48–50. Turcotte fled after a squad car arrived while the two were outside the bank. Compl. ¶ 50. Kirk reported Turcotte's conduct to the responding officer, Sara Schutte, who then walked away from Kirk and began speaking to a third-

party witness. Compl. ¶ 51. Kirk left the scene, but officers later showed up at his home and arrested him for fleeing a police officer. Compl. ¶ 51. While transporting Kirk to jail, Schutte remarked to Kirk: "I could have let you go, but you were being an asshole so I'm taking you to jail." Compl. ¶ 52. Schutte eventually cited Kirk for disorderly conduct, obstructing the legal process, and reckless driving. Compl. ¶ 53. Kirk remained in jail for four days; all charges were eventually dropped. Compl. ¶¶ 52–53.

## II. ANALYSIS

### A. Standard of Review

In reviewing a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), a court must accept as true all of the factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *Perez v. Does 1–10*, 931 F.3d 641, 646 (8th Cir. 2019). Although the factual allegations need not be detailed, they must be sufficient to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The complaint must "state a claim to relief that is plausible on its face." *Id.* at 570.

Ordinarily, if the parties present, and the court considers, matters outside of the pleadings, a Rule 12(b)(6) motion must be treated as a motion for summary judgment. Fed. R. Civ. P. 12(d). But the court may consider materials that are necessarily

embraced by the complaint, as well as any exhibits attached to the complaint, without converting the motion into one for summary judgment. *Mattes v. ABC Plastics, Inc.*, 323 F.3d 695, 697 n.4 (8th Cir. 2003).

Although the Kirks did not attach any documents to their complaint, they later submitted a number of documents (including police reports) on which their counsel had relied in drafting their complaint. Fishman Decl. at 1. The parties apparently regard these documents as either embraced by the complaint or as supplemental attachments to the complaint, and neither side has objected to the Court's consideration of them. ECF No. 18 at 9; ECF No. 22 at 4–8. The Court will therefore consider the documents.

### B. Sara Schutte

In Count VI of their complaint, the Kirks allege that Schutte violated the Equal Protection Clause by discriminating against Aaron Kirk following the road-rage incident with Turcotte. Defendants argue that this claim fails because the Kirks have failed to identify a similarly situated comparator of a different race. *See Mitchell v. Kirchmeier*, 28 F.4th 888, 902 (8th Cir. 2022) ("To prove that the officers who allegedly shot him violated the Equal Protection Clause, Mitchell would need to show that they treated people who were not Native Americans but were otherwise similarly situated to him more favorably than him.").

The Court disagrees. Kirk was ostensibly arrested for fleeing a police officer. Compl. ¶ 51. But Turcotte himself, who is white, also left the scene. Compl. ¶¶ 15, 50. As defendants point out, the complaint does not expressly allege that Turcotte was *not* arrested, but that is a reasonable inference from the allegations in the complaint. *See Perez*, 931 F.3d at 646 (in reviewing a motion to dismiss, a court must draw all reasonable inferences in the plaintiff's favor). Defendants' motion to dismiss this claim is therefore denied.

### C. *Remaining City Defendants*

The Kirks allege a variety of claims against the remaining City defendants, including claims directly under the Fair Housing Act ("FHA"), 42 U.S.C. § 3601 et seq.; claims under 42 U.S.C. § 1983 for FHA violations; claims under § 1983 for violations of the Equal Protection Clause; and claims under Title VI of the 1964 Civil Rights Act, 42 U.S.C. § 2000d.[3]

The statute of limitations for FHA claims is two years. 42 U.S.C. § 3613(a)(1)(A). For the remaining claims, the statute of limitations is six years. *See United States v.*

---

[3]The Kirks voluntarily dismissed their claim under 18 U.S.C. § 245. *See* ECF No. 18 at 10 n.7. Moreover, the Kirks explained at oral argument that, although their complaint cites to the Duluth Human Rights Ordinance, they are not bringing a claim directly under that ordinance. The Kirks likewise seemed to indicate that they are not bringing a direct claim under the Minnesota Human Rights Act ("MHRA"). In any event, like their other claims discussed below, any MHRA claim would be time barred. *See* Minn. Stat. § 363A.28, subd. 3 (one-year limitations period for MHRA claims).

*Bailey*, 700 F.3d 1149, 1153 (8th Cir. 2012) (statute of limitations for § 1983 claim in Minnesota is six years); *Egerdahl v. Hibbing Cmty. Coll.*, 72 F.3d 615, 618 (8th Cir. 1995) (statute of limitations for Title VI claim in Minnesota is six years).

Although the Kirks' complaint does not provide dates for most of the alleged incidents of harassment, the police reports that the Kirks later submitted indicate that nearly all of the incidents occurred long before June 12, 2017—that is, more than six years before the Kirks filed their complaint in this action. The Kirks contend that their claims concerning these incidents are nevertheless timely under the continuing-violation doctrine.

To successfully invoke the continuing-violation doctrine, the Kirks must identify a relevant incident that occurred within the limitations period. *See United States v. Hurt*, 676 F.3d 649, 654 (8th Cir. 2012) (an FHA claim premised on sexual harassment "is timely as long as at least one of the incidents occurred during the limitations period"); *cf. Sewell v. Monroe City Sch. Bd.*, 974 F.3d 577, 584 (5th Cir. 2020) ("Because some acts contributing to a hostile environment allegedly took place within the prescription period, Sewell's harassment claim was timely [under the continuing-violation doctrine].").

At oral argument, the Kirks identified three incidents that occurred within the six-year period preceding their complaint: (1) the 2020 road-rage incident involving

Turcotte, Compl. ¶¶ 3, 48–54; (2) the neighbors' 2019 complaint that Aaron Kirk was building a fence on the neighbors' property, Compl. ¶ 46, ECF No. 19-3 at 40; and (3) a restraining order that one of the neighbors obtained against Aaron Kirk in late 2017, ECF No. 19-3 at 38–39.  As discussed below, however, none of these incidents bring the Kirks' claims within the continuing-violation doctrine.

### 1.  The 2020 Road Rage Incident

The 2020 road rage incident was unconnected to the neighbors' campaign of racist harassment against the Kirks, as it took place away from the Kirks' home and had nothing to do with the neighbors.  Nor do the Kirks allege that the responding officer, Sara Schutte, was ever involved with the neighbors' harassment campaign (or even that Schutte knew about it).  Simply put, there is nothing connecting the 2020 road-rage incident with the neighbors' harassment, and the road-rage incident therefore cannot establish a continuing violation into the limitations period.  *See Roddy v. Monsanto Co.*, 6 F. App'x 549, 553 (8th Cir. 2001) (affirming summary judgment on claim under 42 U.S.C. § 1981 because "the incidents [the plaintiff] relies upon that occurred during the limitations period have no specific connection to earlier events" and there was "no pattern of action by Monsanto sufficient to allow all the incidents Roddy describes to be considered together as a continuing violation of the law").

Moreover, to the extent that the Kirks may seek to hold any City defendant (other than Schutte) liable for the road-rage incident itself, their claims are either time-barred or fail to state a claim. There is no possibility that the City of Duluth is vicariously liable for the incident, as it occurred well outside the limitations period for FHA claims, and there is no vicarious liability under either § 1983[4] or Title VI. *See* 42 U.S.C. § 3613(a)(1)(A); *Street v. Leyshock*, 41 F.4th 987, 989 (8th Cir. 2022) ("§ 1983 does not allow for vicarious liability"); *Ingram v. Kubik*, 30 F.4th 1241, 1258 (11th Cir. 2022) ("Vicarious liability is unavailable under Title VI."); *M.J. ex rel. S.J. v. Akron City Sch. Dist. Bd. of Educ.*, 1 F.4th 436, 453 n.11 (6th Cir. 2021) ("There is no vicarious liability under Title VI." (cleaned up)); *Rodgers v. Smith*, 842 F. App'x 929 (5th Cir. 2021) (per curiam) ("Title VI [does not allow] . . . vicarious liability claims against employers for the acts of their employees.").

Nor does the complaint contain any allegations that would render any other defendant liable for Schutte's conduct. There is no suggestion, for example, that Schutte engaged in a pattern of racial discrimination, much less that any other defendant was aware of any such pattern. As a result, while the alleged road-rage incident states a

---

[4]Although the Kirks' complaint states that they are suing the individual City defendants in both their official and personal capacities, the Kirks' memorandum states that their complaint "contains no *Monell*, or official violation counts whatsoever, which is another reason why all of the state actors are, by definition, being sued in their personal capacity." ECF No. 18 at 13.

claim against Schutte, it does not state a claim against any other defendant and cannot be considered as part of any continuing violation.

### 2.  The 2019 Fence Complaint

The neighbors' 2019 complaint about the fence is plausibly connected to their ongoing harassment of the Kirks, but there is a crucial distinction between this fence incident and the previous incidents:  The Kirks do not allege that any officer came to their home or otherwise contacted them as a result of the 2019 fence complaint.  Indeed, the Kirks do not allege that they even knew about the fence complaint at the time that it was made.

The thrust of the Kirks' complaint is that, for years, the police allowed themselves to be "weaponized" by the neighbors as part of the neighbors' campaign of racist harassment.  Compl. ¶¶ 2, 18–19, 44–45.  In this instance, however, the neighbors were unsuccessful because the police *did exactly what the Kirks wanted them to do*—namely, ignore the neighbors' complaint and leave the Kirks alone.  And although the Kirks may contend that the City defendants could be held liable for failing to investigate or prosecute the neighbors for the fence complaint, the Kirks lack standing to make such a claim.  *See Parkhurst v. Tabor*, 569 F.3d 861, 865–67 (8th Cir. 2009) (crime victims lack standing to complain of the failure to prosecute another, even if the failure

-10-

is alleged to be discriminatory); *Pratt v. Helms*, 73 F.4th 592, 594 (8th Cir. 2023) (extending *Parkhurst* to a failure to investigate), *cert. denied*, 144 S. Ct. 567 (2024).

In some circumstances, a plaintiff may have standing to complain of the failure of police officers to protect them.  *See Parkhurst*, 569 F.3d at 866–67.  In this instance, however, the "protection" that the Kirks wanted—for the neighbors to be deprived of the ability to subject them to unwanted police contact—was *provided*.  In addition, the Kirks cannot complain that any failure to investigate or prosecute the fence complaint constituted a failure to protect them from additional harassment, as they do not allege that there *was* any additional harassment by the neighbors following the fence complaint.  In short, the fence complaint cannot establish a continuing violation into the limitations period because the incident did not involve any actionable conduct by the City defendants.

### 3.  The 2017 Restraining Order

Like the 2019 fence complaint, the 2017 restraining order did not involve any actionable conduct on the part of any of the City defendants.  To begin with, this incident is not properly before the Court, as the complaint does not say a word about it.  Setting that aside, nothing in the documents submitted by the Kirks indicates that any of the defendants had anything to do with either obtaining or enforcing the restraining order.  The continuing-violation doctrine therefore does not revive the Kirks' claims.

4.  Equitable Tolling and Estoppel

In an effort to save their claims, the Kirks also invoke the doctrines of equitable tolling and equitable estoppel, contending that "during their many contacts with the instant Plaintiffs, the Defendant supervisors deliberately mislead Plaintiffs by telling them they would stop" the neighbors' harassment.  ECF No. 18 at 16.

The Kirks do not allege any facts in support of this claim.  Putting that aside, the neighbors' last actionable incident of harassment occurred more than six years before the Kirks filed this lawsuit, and therefore the Kirks cannot show that they acted diligently or that any exceptional circumstance prevented them from filing their lawsuit during the six-year limitations period.  As a result, neither equitable tolling nor equitable estoppel can save their claims.  *See Lozano v. Montoya Alvarez*, 572 U.S. 1, 10 (2014) (under federal law, "equitable tolling pauses the running of, or 'tolls,' a statute of limitations when a litigant has pursued his rights diligently but some extraordinary circumstance prevents him from bringing a timely action"); *Rassier v. Sanner*, 996 F.3d 832, 838 (8th Cir. 2021) (Minnesota standard for tolling is high and applies only in exceptional circumstances "when some factor completely outside the claimant's control prevented him from meeting a statutory deadline" (citation omitted)); *Rodriguez v. Wal-Mart Stores*, 891 F.3d 1127, 1129 (8th Cir. 2018) (under federal law, equitable estoppel "is an exception to the rule, and should therefore be used only in exceptional

circumstances" (citation omitted)); *Hydra-Mac, Inc. v. Onan Corp.*, 450 N.W.2d 913, 919 (Minn. 1990) ("invocation of equitable estoppel may be denied when the party asserting it has failed to exercise due diligence in filing its action *after the grounds giving rise to the claimed estoppel have ceased to exist*"); *see also King-White v. Humble Indep. Sch. Dist.*, 803 F.3d 754, 764 (5th Cir. 2015) ("When a federal cause of action borrows a state statute of limitations, 'coordinate tolling rules' are usually borrowed as well." (citation omitted)).

Finally, in their memorandum, the Kirks assert that they intend to seek leave to amend their complaint to allege facts relevant to equitable tolling and estoppel, ECF No. 18 at 14, and, at oral argument, the Kirks explicitly requested leave to amend. Plaintiffs routinely ask for leave to amend a complaint when a hearing on a motion to dismiss does not seem to be going their way.  Under this District's local rules, however, a motion to amend must be accompanied by two copies of the proposed amended complaint—one clean and the other red-lined to show how the proposed amended complaint differs from the original.  D. Minn. L.R. 15.1(b).  The Kirks did not follow this procedure, and their request to amend is therefore denied.  *See Sorace v. United States*, 788 F.3d 758, 768 (8th Cir. 2015) ("A district court does not abuse its discretion in denying leave to amend where a plaintiff has not followed applicable procedural rules.").

For these reasons, the Court dismisses all claims against the remaining City defendants with prejudice either as time-barred or for failure to state a claim. *See Bell v. Missouri*, 253 F. App'x 606 (8th Cir. 2007) (per curiam) (dismissal on statute-of-limitations grounds to be with prejudice).

ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT:

1. The Clerk of Court is DIRECTED to amend the caption to change "Sara Schultee" to "Sara Schutte."

2. The City Defendants' motion to dismiss [ECF No. 9] is GRANTED IN PART and DENIED IN PART.

3. The motion is DENIED as to Count VI, the claim against defendant Sara Schutte.

4. The motion is GRANTED in all other respects, and all claims against all other defendants (with the exception of Count VII, the claim against defendant Dustin James Turcotte) are DISMISSED WITH PREJUDICE.

Dated:  March 13, 2024                     s/Patrick J. Schiltz
                                           Patrick J. Schiltz, Chief Judge
                                           United States District Court