UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| AARON KIRK and AMY KIRK, | Case No. 23-CV-1758 (PJS/LIB) |
| Plaintiffs, | |
| v. | ORDER |
| CITY OF DULUTH; GORDON RAMSAY, former Chief of the Duluth Police Department, in his official and personal capacity; MICHAEL CEYNOWA, Chief of the Duluth Police Department, in his official and personal capacity; JEFFREY KAZEL, supervisor with the Duluth Police Department, in his official and personal capacity; RONALD TINSLEY, STEVEN PRUSE, and SARA SCHUTTE, officers with the Duluth Police Department, in their official and personal capacities; ROBERT GRYDAHL, former officer with the Duluth Human Rights Commission, in his official and personal capacity; CARL CRAWFORD, officer with the Duluth Human Rights Commission, in his official and personal capacity; DUSTIN JAMES TURCOTTE, | |
| Defendants. | |

Mark Bradford, BRADFORD, ANDRESEN, NORRIE & CAMAROTTO, for plaintiffs.

Plaintiffs Aaron and Amy Kirk brought claims against current and former employees and officials of the City of Duluth, as well as a claim against Dustin Turcotte,

a private individual.  All claims against the current and former city employees and officials have been resolved, leaving only the claim against Turcotte.

This matter is before the Court on the Kirks' motion for a default judgment against Turcotte on that claim.  On November 12, 2024, the Court held an evidentiary hearing on the Kirks' motion and heard testimony from both Aaron and Amy Kirk.  Turcotte did not appear.  Based on the following findings of fact and conclusions of law, the Kirks' motion is granted, and the Court awards Aaron Kirk $50,000 in damages for emotional distress.

## I.  FINDINGS OF FACT

### A.  *The July 10, 2020 Incident*

1. Plaintiffs Aaron Kirk ("Kirk"), who is black, and Amy Kirk, who is white, are a married couple who reside in Duluth, Minnesota.

2. On the morning of July 10, 2020, Kirk was driving to his bank in Duluth when another driver, who turned out to be Turcotte, pulled in behind Kirk.  Turcotte sounded his horn and began yelling racial epithets at Kirk, including calling Kirk a "nigger."

3. Kirk tried to extricate himself from the situation by driving away.

4. Turcotte, who was driving a truck, followed Kirk for approximately 17 blocks and into a parking lot near Kirk's bank.

5.   Kirk pulled into a parking space and Turcotte stopped directly behind him, blocking Kirk's vehicle with his truck.

6.   Turcotte got out of his truck, looking very angry. He continued to call Kirk a "nigger," threatened to kill Kirk, and rummaged around in his truck until he found a pair of brass knuckles with which he threatened Kirk.

7.   Kirk felt very afraid and sufficiently threatened that he took a tire iron out of his car to prepare to defend himself.

8.   A witness confronted Turcotte, who then drove away in his truck.

9.   After Turcotte left, Kirk went into the bank to complete his business.

10.   When Kirk exited the bank, he saw that Turcotte had returned to the parking lot.

11.   Turcotte's reappearance made Kirk feel confused, anxious, and paranoid.

12.   As Kirk exited the bank, the police arrived. Turcotte then fled.

13.   After briefly interacting with the police, Kirk left to complete his errands and return home. Police later came to his house and arrested him, after which Kirk spent four days in jail.

### B. Kirk's Damages

14. In the wake of this incident, Kirk felt—and continues to feel—paranoid and angry. He talks to his wife often about the incident and also speaks to friends about it.

15. Kirk has sporadic nightmares about the incident and sometimes experiences flashbacks.

16. Amy Kirk has noticed a difference in her husband since the incident. Before the incident, Kirk was outgoing. In the immediate aftermath of the incident, Kirk became withdrawn and depressed. Now, Kirk is angrier, more reserved, less relaxed, and hypervigilant. Kirk has also become more protective of his children.

17. In the months following the incident, Kirk attended one counseling session, but did not find it helpful.

18. Kirk's counsel confirmed at the hearing that Kirk is seeking damages only for emotional distress.

19. The Court finds that $50,000 will fairly and adequately compensate Kirk for the emotional distress that he has experienced and is reasonably certain to experience in the future as a result of the incident with Turcotte.

Putting a dollar amount on emotional damages is always difficult. That said, in this case, there are a number of aggravating factors. Turcotte's conduct was sustained

as well as highly threatening and aggressive. He followed Kirk for 17 blocks, trapped Kirk in a parking lot, made explicit threats to kill Kirk, and displayed a weapon. After initially leaving the scene, Turcotte returned. Kirk reasonably feared for his life.

Turcotte's conduct was also extremely demeaning. He repeatedly called Kirk a vile racial epithet and, given Turcotte's language, there is no doubt that Turcotte targeted Kirk because of Kirk's race. The Court found Kirk to be a credible witness and, in particular, found Kirk's testimony as to the effect of such language to be compelling.

At the same time, Kirk sought counseling only once. In addition, it is difficult to separate the emotional distress that Kirk experienced as a result of his arrest and confinement (for which he cannot recover from Turcotte) from the distress that Kirk experienced as a result of his direct interaction with Turcotte.[1] Having considered all of the relevant factors, the Court concludes that $50,000 would fairly and adequately compensate Kirk for the damages attributable to Turcotte.

### C. Turcotte's Default

20.   Turcotte was personally served with the summons and complaint in this action on June 20, 2023. ECF No. 28.

---

[1] Kirk testified that it was Turcotte who called the police. The source of Kirk's knowledge on this point is unclear, however. Moreover, even if Turcotte did call the police, the police did not have to arrest or confine Kirk. That was the decision of the police, not Turcotte. In short, the Court finds that the harm caused by Kirk's arrest and confinement is too attenuated to be attributed to Turcotte.

21. On December 8, 2023, in compliance with an order from Magistrate Judge Leo Brisbois, plaintiffs' counsel sent a letter to Turcotte at Turcotte's last known address, informing Turcotte that he was required to file a responsive pleading or seek an extension of time in which to do so. ECF Nos. 30, 37.

22. Plaintiffs' counsel later sent copies of the Kirks' motion for a default judgment, notice of hearing on the motion, and associated papers to Turcotte's last known address and to a different address located on the internet. ECF No. 66 ¶¶ 1–2. Plaintiffs' counsel also mailed a letter to both addresses notifying Turcotte that a motion for a default judgment was scheduled to be heard on November 12, 2024, at 8:30 am in the undersigned's courtroom. ECF No. 66 ¶ 3 & Exs. 1–2.

23. Despite being personally served and otherwise notified multiple times of the pendency of this action and the hearing on plaintiffs' motion for a default judgment, Turcotte has never filed a responsive pleading, nor has he appeared in this action either personally or through counsel.

24. The Clerk of Court entered a default against Turcotte on January 5, 2024. ECF No. 38.

25. Based on Aaron Kirk's testimony, it is clear that Turcotte is not a minor or incompetent person. *See* Fed. R. Civ. P. 55(b)(2) ("A default judgment may be entered

against a minor or incompetent person only if represented by a general guardian, conservator, or other like fiduciary who has appeared.").

26.     Turcotte is not in military service.  ECF No. 69; *see* 50 U.S.C. § 3931 (providing military servicemembers certain procedural protections from default judgments).

## II.  CONCLUSIONS OF LAW

1.      Plaintiffs bring a claim against Turcotte under Minn. Stat. § 611A.79.  Section 611A.79 permits "[a] person who is damaged by a bias offense" to recover the greater of $500 or "actual general and special damages, including damages for emotional distress" from the person who committed the offense.  *Id.* subd. 2.

2.      A "bias offense" is "conduct that would constitute a crime and was committed because of the victim's or another's actual or perceived race, color," or other protected characteristic.  *Id.* subd. 1.

3.      Turcotte's conduct toward Kirk on July 10, 2020—in particular, his verbal threat to kill Kirk while preventing Kirk from escaping, his display of brass knuckles, and his calling Kirk racial epithets—constituted a criminal assault under Minn. Stat. § 609.2231, subd. 4.  That provision makes it a misdemeanor to "assault[] another in whole or in substantial part because of the victim's or another's actual or perceived race, color," or other protected characteristic.  *See also* Minn. Stat. § 609.02, subd. 10

(defining "assault" to include "an act done with intent to cause fear in another of immediate bodily harm or death").

4. Turcotte therefore committed a "bias offense" against Kirk within the meaning of § 611A.79. As a result, Kirk is entitled to recover damages for his emotional distress.

5. Plaintiffs have complied with all of the procedural prerequisites for obtaining a default judgment against Turcotte. *See* Fed. R. Civ. P. 55(b).

6. As the Court has concluded that $50,000 will fairly and adequately compensate Kirk for the emotional distress caused by Turcotte's bias offense, the Court awards Kirk $50,000 and directs that a default judgment in that amount be entered against Turcotte.

## ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT:

1. Plaintiffs' motion for default judgment [ECF No. 63] is GRANTED.

2. Plaintiff Aaron Kirk shall recover $50,000 from defendant Dustin James Turcotte.

3. Plaintiffs' counsel shall serve a copy of this order and corresponding judgment to Turcotte at Turcotte's last known mailing address.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated:  November 26, 2024				s/Patrick J. Schiltz
						Patrick J. Schiltz, Chief Judge
						United States District Court